| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Law Offices of Andy Winchell, P.C.<br>100 Connell Drive, Suite 2300<br>Berkeley Heights, New Jersey 07922<br>Telephone No. (973) 457-4710<br>andy@winchlaw.com<br>By: Andy Winchell [AW-6590]<br>Attorney for the Debtor | |
| In Re:<br><br>Alan Francis Miller<br><br>                       Debtor | Case No.: 16-29760 (RG)<br><br>Chapter: 11<br><br>Hon. Rosemary M. Gambardella |
| Alan Francis Miller<br><br>                       Plaintiff<br><br>                       vs.<br><br>Shellpoint Mortgage Servicing<br><br>                       Defendant | Adv. Pro. No: |

**COMPLAINT OF THE DEBTOR FOR VIOLATIONS OF: (I) THE
REAL ESTATE SETTLEMENT PROCEDURES ACT AND REGULATION X;
(II) THE NEW JERSEY CONSUMER FRAUD ACT; AND
<u>(III) THE FAIR DEBT COLLECTION PRACTICES ACT</u>**

**PRELIMINARY STATEMENT**

1.      This is an action brought by the Debtor/Plaintiff that seeks redress for the failure of the Defendant to evaluate the Plaintiff's request for loss mitigation and for the failure of the Defendant to respond to a notice of error in response thereto.

2. This is also an action that seeks redress for the Defendant's false and misleading statements that the Defendant had valued that Plaintiff's home at $335,000 based upon an appraisal that cannot be justified.

## JURISDICTION

3. This is primarily a non-core proceeding as that term is defined by Section 157(b)(2) of Title 28 of the United States Code. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United States Code in that this proceeding arises in and is related to the above-captioned case under Title 11 and concerns property of the Debtor in that case. Jurisdiction is also conferred on this Court pursuant to the provisions of Section 1331 of Title 28 of the United States Code in that this proceeding arises out of matters of federal law.

4. The Plaintiff consents to entry of a final order to any non-core claim for relief.

5. The Defendant has consented to the entry of a final order by making appearances in the underlying bankruptcy case.

6. This case is brought in compliance with the applicable statutes of limitations.

## PARTIES

7. The Plaintiff is an unmarried man who lives in Oak Ridge, New Jersey.

8. For all purposes relevant to this action, the Plaintiff is a "consumer" and a "borrower" according to the relevant statutes.

9. On information and belief, the Defendant is a corporation with a principal place of business in Greenville, South Carolina. The Defendant is the mortgage servicer for the Plaintiff's mortgage loan.

## FACTUAL BACKGROUND

10. The Plaintiff obtained a mortgage loan (the "Mortgage Loan") from Countrywide Home Loans, Inc. ("Countrywide") on or about June 22, 2007 which is secured by the Plaintiff's home in Oak Ridge, New Jersey.

11. The Mortgage Loan is federally related mortgage loan as defined by 12 U.S.C. § 2602 and 12 C.F.R. § 1024.5(a).

12. On information and belief, Countrywide sold the Plaintiff's Mortgage Loan shortly after originating it.

13. The Mortgage Loan was predatory and the Plaintiff ultimately ceased being able to make the regular payments thereon in January 2011.

14. The Defendant began servicing the Defendant's Mortgage Loan in 2016, well after the Plaintiff ceased making payments thereon.

15. The Defendant currently services the Mortgage Loan on behalf of its owner.

16. Thus, the Defendant is a "debt collector" for the purposes of the FDCPA.

17. The Defendant is bound by the Real Estate Settlement Procedures Act 12 U.S.C. § 2601 et seq. ("RESPA") and Regulation X, 12 C.F.R. § 1024.36. The Plaintiff submitted a loss mitigation application to the Defendant more than thirty-seven days before a sheriff sale and yet the Defendant failed to evaluate the Plaintiff's loss mitigation application within thirty days as required by RESPA and Regulation X. The Defendant also failed to conduct a reasonable investigation into its errors when the Plaintiff identified them through "Notices of Error" as such term is defined by RESPA and Regulation X, 12 C.F.R. § 1024.35(a) and correct them.

18. The Plaintiff commenced this bankruptcy case (the "Bankruptcy Case") by filing a chapter 13 petition on October 17, 2016.

19. The Defendant has not filed a proof of claim in the Bankruptcy Case.

20. Even though the Defendant has not filed a proof of claim, the Defendant has filed a motion to lift the automatic stay in the Bankruptcy Case. See Bankruptcy Case Docket #48.

21. The Plaintiff specifically requests that this adversary be considered a counterclaim to the Defendant's motion to vacate the stay.

22. The Defendant also returned adequate protection payments received from the Plaintiff. See Exhibit A.

23. The Plaintiff has been attempting to sell his home located at 543 Oak Ridge Road, Oak Ridge, New Jersey (the "Property") since late 2017.

24. In November 2017, the Plaintiff placed the Property on the market.

25. Although there was plenty of interest with respect to the Property, the Property has a significant flooding problem that has dissuaded potential buyers. Specifically, during seasons when the water table is high, the Property requires nearly constant sump pump use to remove water from the home's lower level. As such, the only offer that the Plaintiff received was from his next-door neighbor, William Malanche (the "Purchaser"), for whom the Property has value as adjacent land.

26. The Plaintiff and the Purchaser initially agreed to a sale price of $250,000 subject to Court approval and possible overbid.

27. The Plaintiff filed a Motion to Sell Property Pursuant to Section 363(b) of the Bankruptcy Code (the "Sale Motion") on December 29, 2017.

28. On January 18, 2018, the Plaintiff submitted his initial Loss Mitigation Application (the "First Loss Mitigation Application") to the Defendant requesting that the Defendant consent to the proposed sale.

29. RESPA and Regulation X allow servicers five days following the receipt of a loss mitigation package to request additional documents.

> (2) *Review of loss mitigation application submission*
>
> (i) *Requirements.* If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
>
> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
>
> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. <u>If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section.</u> The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.
>
> (ii) *Time period disclosure.* The notice required pursuant to paragraph (b)(2)(i)(B) of this section <u>must include a reasonable date by which the borrower should submit the documents</u> and information necessary to make the loss mitigation application complete.

12 C.F.R. § 1024.41(b) [emphasis added].

30. The commentary to 12 C.F.R. § 1024.41(b) states that such notice must be written and that thirty days is generally considered a reasonable time to allow the borrower to provide documents requested.

31. Further, a mortgage servicer must "exercise reasonable diligence in obtaining documents and information to complete an incomplete loss mitigation application (e.g., <u>promptly contacting the borrower to obtain missing information</u> or

5

determining whether information exists in the servicer's files already that may provide the information missing from the borrower's application)." Id.

32. On January 30, 2018, however, the Defendant objected to the Sale Motion on the grounds that the Defendant needed additional time to evaluate the First Loss Mitigation Application.

33. On February 9, 2018, more than two weeks after the deadline for doing so, the Defendant informed the Plaintiff that three additional documents were necessary to complete the First Loss Mitigation Application.

34. The Defendant did not provide the Plaintiff a date by which he must provide the documents requested.

35. The Defendant also did not indicate on February 9, 2018 that the Defendant wanted to appraise the Property.

36. Nevertheless, on February 21, 2018, twelve days after requesting documents from the Plaintiff, the Defendant transmitted a denial letter (the "February 21, 2018 Denial Letter").

37. The February 21, 2018 Denial Letter is attached hereto as Exhibit B and states that the Defendant denied the First Loss Mitigation Application because the Defendant did not receive the documents that it requested.

38. As stated above, the Defendant had requested such documents only twelve days earlier and has not provided the Plaintiff with a deadline for providing the documents requested.

39. Twelve days is not a reasonable time in which to request documents in the loss mitigation process.

40. The Defendant later realized its error and suggested that the Plaintiff submit a second loss mitigation application.

6

41. The Defendant also conducted an appraisal of the Property on or about May 2, 2018 that reported a value of $280,000 for the Property.

42. Plaintiff then provided the Defendant all of the documents it requested (the "Second Loss Mitigation Application") on or about June 19, 2018.

43. Thus, Regulation X allowed the Defendant until June 26, 2018 to notify the Plaintiff that it required additional documents.

44. The Defendant did not contact the Plaintiff to inform him or his counsel that additional documents were necessary for the completion of the Second Loss Mitigation Application.

45. Therefore, the Second Loss Mitigation Application was deemed complete no later than June 19, 2018.

46. RESPA requires a mortgage loan servicer to evaluate a request for loss mitigation within thirty days of its becoming complete. 12 C.F.R. § 1024.41 (c) and (d).

47. On July 31, 2018, the Defendant's counsel reported to Plaintiff's counsel that the Defendant said that it had contacted Plaintiff's counsel by telephone to request additional documents.

48. Unlike other portions of Regulation X, 12 C.F.R. 1024.41(b) does not provide for an oral communication to provide notice of documents that a mortgage servicer might require to complete a loss mitigation package.

49. The commentary to 12 C.F.R. § 1024.41(b)(ii) states that the notice must be a written notice.

50. Further, a review of the telephone records and voicemail messages received by Plaintiff's counsel in the week following June 19, 2018 shows no communications from the Defendant.

51. In short, the Defendant simply failed to evaluate the Second Loss Mitigation Application within thirty days of receipt as required by 12 C.F.R. 1024.41 (c) and (d).

52. Notwithstanding the Defendant's failure to fulfill its obligation to evaluate the Plaintiff's Second Loss Mitigation Application, the Plaintiff decided to give the Defendant yet another opportunity rather than bringing this action immediately.

53. Therefore, on or about August 24, 2018, the Plaintiff submitted yet another loss mitigation application (the "Third Loss Mitigation Application") seeking to have the Defendant evaluate the proposed sale of the Property.

54. By letter dated August 28, 2018, the Defendant deemed the Third Loss Mitigation Application to be complete. That letter is attached hereto as Exhibit C.

55. The Defendant later communicated through counsel in writing that the Defendant required additional documents that it had not requested previously. The Plaintiff provided those documents not later than October 17, 2018.

56. Thereupon the Defendant also decided that it needed to conduct another appraisal. This new appraisal would come: (1) less than six months following the first appraisal; (2) less than a year after the Property had been actively marketed for sale; and (3) shortly before the Property would be sold subject to overbid pursuant to 11 U.S.C. § 363(b).

57. Nevertheless, the Plaintiff consented to a second, completely unnecessary appraisal (the "Second Appraisal"). The Second Appraisal was completed on or about November 8, 2018.

58. Thus, even assuming the Second Appraisal comprised part of the Third Loss Mitigation Application, the Defendant should have completed its evaluation of the

Third Loss Mitigation Application no later than thirty days following November 8, 2018, or December 8, 2018.

59. The Plaintiff informed the Defendant of its servicing failures by transmitting a Notice of Error on January 11, 2019 attached hereto as Exhibit D.

60. The Defendant informed the Plaintiff through counsel on January 11, 2019 that the Second Appraisal yielded an estimated value of $335,000 and the Defendant would not accept a purchase for less than that price.

61. That the Defendant did not provide the appropriate response to the Third Loss Mitigation Application within thirty days of its completion is an obvious violation of RESPA and Regulation X.

62. Further, the Second Appraisal is clearly in error.

63. The Second Appraisal does not take into account the extensive flooding problem in Property that probably cannot be remedied without rebuilding the house structure.

64. If the Second Appraisal were accurate, the Plaintiff would have received offers for the Property when the Plaintiff had the Property on the market in last 2017.

65. Instead, the sole offer the Plaintiff received is from a neighbor, who wants the Property only as an adjacent parcel.

66. The Defendant has a pattern and practice of failing to service mortgage loans competently.

67. The Plaintiff has incurred actual damages, including but not limited to decreased productivity in his work, mileage, postage, and attorney's fees, as a result of the Defendant's unlawful conduct.

## FIRST CLAIM FOR RELIEF
### (Violation of the Real Estate Settlement Procedures Act and Implementing Regulation X)

68. The allegations in the foregoing paragraphs of this complaint are realleged and incorporated herein by this reference.

69. The loss mitigation provisions of Regulation X were implemented by the Consumer Financial Protection Bureau pursuant to a grant of congressional authority arising from the 2010 Dodd/Frank Wall Street Reform and Consumer Protection Act.

70. In passing the Dodd/Frank Wall Street Reform and Consumer Protection Act, Congress recognized an important policy objective in avoiding preventable foreclosures on federally related mortgage loans.

71. RESPA and Regulation X impose on mortgage servicers a duty of due care to the borrowers of federally related mortgage loans.

72. Mortgage servicers "must maintain policies and procedures reasonably designed to meet the objectives identified in 12 CFR 1024.38(b)."

73. Mortgage servicers must have "policies and procedures" that are "reasonably designed to ensure that the servicer can" perform the following tasks:

74. "Provide accurate information regarding loss mitigation options available to the borrower" 12 C.F.R. 1024.38(b)(2)(a).

75. "Identify specifically all loss mitigation options available to a borrower" 12 C.F.R. 1024.38(b)(2)(a).

76. "In response to a complete loss mitigation application, properly evaluate the borrower for all eligible loss mitigation options pursuant to any requirements established by the owner or assignee of the mortgage loan." 12 C.F.R. 1024.38((b)(2)(e).

77. Violations of 12 C.F.R. 1024.38 are not directly actionable by borrowers but errors arising from the mortgage servicer's failure to institute appropriate policies are directly actionable.

78. A mortgage "servicer that receives a complete loss mitigation application more than 37 days before a foreclosure sale must…evaluate the borrower for all loss mitigation options available to the borrower from the owner or investor of the borrower's mortgage loan." 12 C.F.R. § 1024.41(c).

79. Regulation X (12 C.F.R § 1024.35 (e)) requires that upon receipt of a Notice of Error, the servicer must respond to the notice within thirty days by either:

    a. Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance;

or

    b. Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

80. The Defendant failed to acknowledge or respond appropriately to the Plaintiff's Notice of Error.

81. The Defendant failed to conduct a reasonable investigation in response thereto to determine whether an error had occurred.

82. The Defendant ignored its obligations under 12 C.F.R. 1024.36, and failed to respond as required to the Plaintiff's Notice of Error.

83. Pursuant to 12 C.F.R. §1024.41(a) and 12 U.S.C.§ 2605(f), borrowers are expressly authorized to bring a civil action for violations of the Regulation X loss mitigation procedures. Similarly, 12 U.S.C.§ 2605(f), also provides a private right of action for a borrower when a servicer fails to comply with the error resolution procedures.

84. As a result of the Defendant's repeated violations of Regulation X's express requirements, the Plaintiff has incurred actual damages and ascertainable loss, including but not limited to decreased productivity in work, mileage, postage, and attorney's fees.

85. The Defendant's failure to comply with obligations under RESPA and Regulation X are not isolated incidents but rather represent a pattern and practice of non-compliance with RESPA. The Defendant's pattern or practice of non-compliance with RESPA is due to systemic deficiencies which arise from the Defendant's failure to develop policies and procedures to comply with RESPA/Regulation X, to employ qualified personnel, to appropriately train, manage, and supervising its servicing employees, and a general failure to adequately invest in servicing infrastructure. The Defendants' omissions are the consequence of decisions that the Defendant has made in order to enhance the Defendants' own profits at the expense of the borrowers whose loans the Defendant services. Accordingly, the Plaintiff is entitled to an award of statutory damages, as well as actual damages.

**SECOND CLAIM FOR RELIEF**
**(Violation of the Real Estate Settlement**
**Procedures Act and Implementing Regulation X)**

86. The allegations in the foregoing paragraphs of this complaint are realleged and incorporated herein by this reference.

87. Regulation X (12 C.F.R. § 1024.41(b)(2)) provides as follows:

>   (i) Requirements. If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
>
>   (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
>
>   (B) Notify the borrower in writing <u>within 5 days</u> (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application <u>that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete</u>. If a loss mitigation application is incomplete, <u>the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section</u>. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

12 C.F.R. § 1024.41(b) [emphasis added].

88. Regulation X (12 C.F.R. § 1024.41(c)) provides that a mortgage "servicer that receives a complete loss mitigation application more than 37 days before a foreclosure sale must take two steps within 30 days: (i) evaluate the borrower for all loss mitigation options available to the borrower from the owner or investor of the borrower's mortgage loan; and (ii) provide the borrower with a written notice stating which loss mitigation options, if any, the servicer will offer to the borrower."

89. The Plaintiff submitted the First Loss Mitigation Application to the Defendant on January 18, 2018.

90. The Defendant did not acknowledge the First Loss Mitigation Application, state that the application was complete or incomplete, or request additional documents or information before January 25, 2018.

91. Therefore the First Loss Mitigation Application was deemed complete on January 18, 2018.

92. When the Defendant contacted the Plaintiff to request additional documents, the Defendant did not state a date by which the Plaintiff should provide such documents.

93. Further, the actual date, February 21, 2018, was obviously unreasonable.

94. The Defendant did not evaluate the First Loss Mitigation Application within thirty days of its completion as required by 12 C.F.R. § 1024.41(c) and (d).

95. The Plaintiff submitted the Second Loss Mitigation Application to the Defendant on June 18, 2018.

96. The Defendant did not request additional documents or information before June 25, 2018.

97. Therefore the Second Loss Mitigation Application was deemed complete as of June 18, 2018.

98. The alleged telephone communication from the Defendant to the Plaintiff's counsel would not have been sufficient to comply with the requirement of a written notice pursuant to 12 C.F.R. § 1024.41(b)(2).

99. As explained above, the Defendant did not evaluate the Second Loss Mitigation Application within thirty days of its completion as required by 12 C.F.R. § 1024.41(c) and (d).

100. The Plaintiff submitted the Third Loss Mitigation Application to the Defendant on August 24, 2018.

101. The Defendant requested additional documents that the Plaintiff provided on or about October 17, 2018.

102. The Defendant did not request additional documents or information before October 24, 2018.

103. Therefore the Third Loss Mitigation Application was deemed complete on October 17, 2018.

104. As explained above, the Defendant did not evaluate the Third Loss Mitigation Application within thirty days of its completion as required by 12 C.F.R. § 1024.41(c) and (d).

105. Pursuant to 12 C.F.R. §1024.41(a) and 12 U.S.C.§ 2605(f), borrowers are expressly authorized to bring a civil action for violations of the Regulation X loss mitigation procedures. Similarly, 12 U.S.C.§ 2605(f), also provides a private right of action for a borrower when a servicer fails to comply with the error resolution procedures.

106. As a result of the Defendant's repeated violations of Regulation X's express requirements, the Plaintiff has incurred actual damages, including but not limited to decreased productivity in work, mileage, postage, and attorney's fees.

107. The Defendant's failure to comply with obligations under RESPA and Regulation X are not isolated incidents but rather represent a pattern and practice of non-compliance with RESPA. The Defendant's pattern or practice of non-compliance with RESPA is due to systemic deficiencies which arise from the Defendant's failure to develop policies and procedures to comply with RESPA/Regulation X, to employ qualified personnel, to appropriately train, manage, and supervising its servicing employees, and a general failure to adequately invest in servicing infrastructure. The Defendants' omissions are the consequence of decisions that the Defendant has made in order to enhance the Defendants' own profits at the expense of the borrowers whose loans the Defendant services. Accordingly, the Plaintiff is entitled to an award of statutory damages, as well as actual damages.

## THIRD CLAIM FOR RELIEF
### (Violation of the New Jersey Consumer Fraud Act)

108. The allegations in the foregoing paragraphs of this complaint are realleged and incorporated herein by this reference.

109. The New Jersey Consumer Fraud Act (the "NJCFA") prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid." N.J.S.A. 56:8-2

110. The definitions of "advertising" and "merchandise" include mortgage loans and consumer credit even after a foreclosure judgment has been entered. Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 25 A.3d 1103 (N.J. 2011).

111. The NJCFA does not define "unconscionable commercial practice."

112. The Webster's New World College Dictionary, 4th Edition ("Webster's") defines "unconscionable" as "not fair or just."

113. Thus, a commercial practice in connection with the finance of real estate that is "not fair or just" violates the NJCFA.

114. A practice that is neither fair nor just is, according to Webster's, also unconscionable. Therefore a commercial practice with respect to the financing of real estate that is not fair or just is also unconscionable for the purposes of the NJCFA and renders such entity liable pursuant to the NJCFA.

115. On July 31, 2019, the Defendant falsely stated through counsel that the Defendant had contacted the Plaintiff's counsel to request documents in connection with the Second Loss Mitigation Application.

116. The Defendant made this statement to make the Plaintiff believe that the Defendant's failure to evaluate the Second Loss Mitigation Application was the fault of the Plaintiff rather than the fault of the Defendant.

117. The Defendant also conducted two appraisals of the Property roughly six months apart that came to values separated by $55,000.

118. The Second Appraisal is so wildly inflated that it unconscionable for the Defendant to demand that anyone take it seriously.

119. Any unconscionable practice with respect to the financing of real estate renders such entity liable pursuant to the NJCFA.

120. The Plaintiff has suffered ascertainable loss as a result of the Defendant's unlawful conduct, the Plaintiff has incurred actual damages and ascertainable loss, including but not limited to decreased productivity in work, mileage, postage, and attorney's fees.

### FOURTH CLAIM FOR RELIEF
### (Violation of the Fair Debt Collection Practices Act)

121. The allegations in the preceding paragraphs are realleged and incorporated herein by this reference.

122. The foregoing acts and omissions by the Defendant constitute violations of the FDCPA.

123. Specifically and without limitation, the Defendant violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10) by making the false representation that it contacted the Plaintiff's office by telephone in the days following the Plaintiff submitting the Second Loss Mitigation Application to request additional documents.

124. Also specifically and without limitation, the Defendant violated 15 U.S.C. § 1692f by using an inflated appraisal to obtain debt collection leverage against the Plaintiff.

125. As a result of the Defendant's violations of the FDCPA, the Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 per violation pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

**WHEREFORE,** the Plaintiff having set forth claims for relief against the Defendants respectfully prays of the Court as follows:

a. For a declaratory judgment that the Defendant's actions as described herein violate RESPA and Regulation X;

b. For a declaratory judgment that the Defendant's actions as described herein violate the NJCFA;

c. For a declaratory judgment that the Defendant's actions as described herein violate the FDCPA;

d. That the Plaintiff be awarded and recover actual, statutory and punitive damages in an amount to be determined by this Court;

e. That the Plaintiff have and recover reasonable legal fees in an amount to be determined by this Court;

f. That the Plaintiff recover all reasonable costs and expenses in this case in an amount to be determined by this Court;

g. That the Plaintiff have such other and further relief as to the Court may seem just and proper.

Dated this the 4th day of February, 2019.


/s/ Andy Winchell
Law Offices of Andy Winchell
100 Connell Drive, Suite 2300
Berkeley Heights, New Jersey 07922
973-457-4710
andy@winchlaw.com
Attorney for the Plaintiff

19